CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
FEB 0 5 2008
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ELLEN FERGUSON, *Plaintiff,* | CIVIL NO. 6:06cv00049 |
| v. | MEMORANDUM OPINION and ORDER |
| GEORGIA-PACIFIC, LLC, *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on November 20, 2007 (docket entry no. 13). Plaintiff, proceeding *pro se*, alleges Georgia-Pacific, LLC ("Georgia-Pacific") violated 42 U.S.C. § 1981 by terminating her employment on the basis of her race. Plaintiff has failed to establish a *prima facie* case; therefore, Defendant's Motion is GRANTED.

## I. BACKGROUND

Georgia-Pacific is a large manufacturer and distributor of tissue, pulp, paper, packaging and building products based in Atlanta, Georgia. Georgia-Pacific operates a facility in Brookneal, Virginia which produces oriented strand board, an engineered structural panel used in the building trade. Ferguson, an African-American female, was hired by Georgia-Pacific on December 12, 1995 as Process Technician at Georgia-Pacific's Brookneal facility. Initially, Ferguson was employed in the wood slashing operation area, but in 1999, Ferguson applied for and received a transfer to the knife room. Ferguson's duties in the knife room included cleaning and grinding the knives used to cut wood into flakes. Ferguson was employed as a technician in

the knife room until her termination in September 2005.

After her transfer to the knife room, Ferguson filed a series of complaints relating to her co-workers' conduct. The first complaint was filed in 2000 and arose from John Stevens' offensive use of the "N-word" in her presence. Ferguson and another co-worker, Elizabeth Howard, complained to plant management. Georgia-Pacific disciplined Stevens for his behavior after an investigation, and Stevens did not use the "N-word" again after the disciplinary action. (Pl. Dep. at 65).

Beginning in 2003, Ferguson began to file a series of complaints against several of her co-workers. Ferguson filed complaints in 2004 and 2005 against co-worker Rusty Breeden based on poor hygiene habits, failure to comply with safety rules, and a generally uncivil attitude toward Ferguson. Ferguson filed complaints against Floyd Bryant in 2005 based on his poor attitude and lazy work habits. Ferguson filed complaints against Wayne Craig in 2004 and 2005 because he passed gas in her presence in the break room. Ferguson filed complaints against Johns Stevens in 2003, 2004, and 2005 based on his failure to clean up after using Ferguson's work area. Ferguson also complained to area manager Wayne Bales that her supervisor, Robert Jones, had not taken seriously her recent complaints about her co-workers' behavior.

On June 5, 2005, Ferguson requested a meeting with her supervisor, Robert Jones, to discuss her continuing concerns with her co-workers. On June 7, 2005, Robert Jones and area manager Wayne Bales met with Ferguson. At that meeting Ferguson recounted her complaints against John Stevens,[1] Rusty Breeden, Floyd Bryant, and Wayne Craig. At no point in this meeting did Ferguson assert that the actions of her co-workers were related to her race. (Pl. Dep. at 22, 99–101)

During the June 7th meeting, Ferguson suggested that Georgia-Pacific should install video cameras in her work place to observe her co-workers poor behavior. She then stated that she might have pictures documenting her co-workers poor habits.[2] Bales replied that is was against company policy to take photographs or video of company facilities, and requested that Ferguson bring to him any photos of the Brookneal facility in her possession the following day.

On June 8th, Ferguson met with Jones and Bales, and admitted that she did not have any photographs. She explained that she made the statement to see how they would react. As a result of Ferguson's statements regarding the photographs, Bales decided to place Ferguson on administrative leave with pay, while an investigation was conducted into her allegations. After an investigation by Human Resources Manager Kenny Richardson, Bales concluded that there was no factual evidence to support Ferguson's complaints against her co-workers. Bales also concluded that Ferguson had intentionally misrepresented facts when she implied that she had photographs of her work area, and decided to give Ferguson a final written warning and last chance reprimand. On July 6, 2005 Georgia-Pacific informed Ferguson that pursuant to the final written warning, any violations of company policies or procedures within the following eighteen months would result in immediate termination.

On August 31, 2005, Ferguson committed a safety violation. The incident occurred when Rusty Breeden entered the knife room and Ferguson continued to use compressed air, blowing dirt and knife shavings on to Breeden. Georgia-Pacific safe operating procedures require that

---

[1] Ferguson's complaints about John Stevens were limited to his work habits and poor hygiene and did not reference the incident in 2000. (Pl. Dep. at 22, 99–101).
[2] There is disagreement between Plaintiff and Defendant as to how Plaintiff phrased her possession of photographic evidence. Plaintiff states that she meant her statement as a hypothetical "what if I had photos of my co-workers." Defendant argues that Plaintiff's statements implied she actually had photographs in her possession. For purposes of this motion, I will assume Plaintiff's description of events is correct.

- 3 -

Case 6:06-cv-00049-NKM-mfu   Document 24   Filed 02/05/08   Page 3 of 11   Pageid#: 235

one blowing compressed air should "always direct air away from yourself or anyone else."[3] (Pl. Dep. Ex. 6; Bales Aff. ¶ 17.) Breeden filed a complaint based on the incident, and Bales initiated an investigation and placed Ferguson on suspension with pay pending the outcome of the investigation.

At this time, Ferguson contacted Georgia-Pacific's regional human resources manager, Denise Hughes, and told her of the events leading to her suspension. Ferguson disputed Breeden's claim that she had purposely blown dirt and shavings onto him. She also told Hughes about her prior complaints about Breeden, Stevens, Craig, and Jones

Hughes conducted an inquiry and determined that Ferguson had in fact committed a safety violation and should be discharged. The investigation revealed that when Breeden entered the knife room he signaled Ferguson to stop blowing. Ferguson continued to blow the dirt and knife shavings toward and onto Breeden. Bales determined that Ferguson's actions constituted a serious safety violation and terminated her employment on September 19, 2005.

Ferguson disputes Hughes narration of events. In her Complaint, Ferguson alleges that she first spoke with Hughes in June of 2005 and asked her to file charges with the Georgia-Pacific EEOC based on her complaints about her co-workers. According to Ferguson, Hughes failed to file a complaint with the EEOC, and violated her privacy rights by informing Bales of her request. Ferguson alleges that Bales retaliated for her conversation with Hughes by terminating her employment.

---

[3] Blowing compressed air onto the skin poses a hazard, because compressed air can pass through the skin and enter the bloodstream with potentially lethal consequences. (Bales Aff. at ¶ 22) Also, airborne metal shavings can potentially damage the eye or enter the respiratory system. (Bales Aff. at ¶ 22)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Furthermore, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250. Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

- 5 -

trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

### III. DISCUSSION

Ferguson's Complaint, liberally construed,[4] presents two possible theories of racial discrimination by Georgia-Pacific: (1) discriminatory discharge, or (2) retaliation.[5]

#### A. Discriminatory Discharge

In cases of alleged discriminatory discharge the familiar *McDonnell Douglas* burden shifting methodology applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case for discriminatory discharge under this framework Plaintiff must present evidence "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate

---

[4] Because *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," courts must "construe *pro se* complaints liberally." *Baudette v. City of Hampton*, 775 F.2d 1274, 1277–1278 (4th Cir. 1985). Fourth Circuit precedent "expresse[s] the indisputable desire that those litigants with meritorious claims should not be tripped up in court on technical niceties." *Id.* at 1277–78 (citation omitted). Courts need not, however, "conjure up questions never squarely presented to them. . . . Even in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence fragments." *Id.* at 1278.

[5] In her Opposition to Defendant's Motion for Summary Judgment, Plaintiff also claims she suffered discrimination on the basis of her gender. This argument does not appear in her pleading, and cannot be heard by the Court. Moreover, 42 U.S.C. § 1981 does not apply to gender discrimination. *Runyon v. McCrary*, 427 U.S. 160, 167 (1976); *Cornell v. Gen. Elec. Plastics*, 853 F. Supp. 221, 223 (S.D. W.Va. 1994).

- 6 -

expectations at the time of the adverse employment action;" and (4) this action occurred under circumstances giving rise to an inference of unlawful discrimination, such as the "position remained open or was filled by similarly qualified applicants outside the protected class." *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*).

Ferguson has failed to produce sufficient evidence on elements three and four to establish a *prima facie* case. On element three, Georgia-Pacific has produced evidence showing that Ferguson was cited on seven different occasions for tardiness or absenteeism in the years 1997 to 2005. Indeed, in February 2005, Ferguson was placed on a three day suspension for continued tardiness and absenteeism. Furthermore, in June 2005, Ferguson was given a last chance warning based on her allegedly dishonest statements regarding photographs of her workplace.[6] Finally, in September 2005, Ferguson committed a safety violation which then led to her termination.

In rebuttal of Georgia-Pacific's evidence that Ferguson was not meeting legitimate business expectations, Ferguson relies solely on her own testimony and the affidavit of a former co-worker.[7] She argues that many employees showed up late for work, and that it was common practice to continue blowing when others entered the knife room. However, Georgia-Pacific has documented a history of disciplinary violations by Ferguson. Ferguson must come forward with evidence of her own showing that these violations were insignificant, or that she was otherwise living up to legitimate expectations. She has failed to do so and therefore has not made out a

---

[6] Ferguson disputes Georgia-Pacific's characterization of her statements about the photographs as dishonest.
[7] Ferguson provided the affidavit of former co-worker, Tom Overstreet. However, a significant portion of Overstreet's Affidavit is inadmissible as hearsay or is conclusory. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[A]n affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court"). Overstreet left Georgia-Pacific in March 2004, over one year before Ferguson was terminated. He thus has no personal knowledge of most of the

*prima facie* case.

Similarly, Ferguson has not offered any evidence with regard to the fourth element that would create an inference that she was terminated on the basis of her race.[8] Generally, a plaintiff alleging discriminatory discharge would present evidence of similarly situated employees outside her protected class who were not terminated under the same or similar circumstances. Ferguson has not done so. Furthermore, she has not presented any evidence as to the race of the employee who took her place, which was long been a virtual requirement for a *prima facie* case of discriminatory discharge in the Fourth Circuit. *See Miles v. Dell*, 429 F.3d at 485. Ferguson has produced no evidence of racially motivated conduct by anyone at Georgia-Pacific beyond the single incident five years earlier when Stevens used the "N-word" in her presence.[9] The evidence produced by Ferguson is insufficient to support a *prima facie* case.

### B. Illegal Retaliation

In order to establish a *prima facie* case of illegal retaliation under 42 U.S.C. § 1981, a Plaintiff must prove that "(1) [she] engaged in protected activity, (2) [she] suffered an adverse employment action at the hands of [her] employer; and (3) the employer took the adverse action

---

events at issue in this case.

[8] Ferguson's deposition testimony indicates that she herself did not believe she was discriminated upon on the basis of her race. Ferguson testified:
 Q: Just give me one second here. You're not alleging that anyone harassed you because of your race, correct?
 A. Correct.
(Pl. Dep. at 142). Ferguson also stated:
 A: Right. If I complain about a co-worker and you put me out of work and then a co-worker complained about me and you put me out of work. Now, when I complained about the co-worker, why didn't you put them out of work?
 Q: That has anything to do with your race, does it?
 A: No, and I didn't say that it did. My thing was I complained about somebody and got put out of work. Somebody complains about me and I still get put out of work.
(Pl. Dep. at 135). However, mindful that Ferguson is not represented by counsel, I have based my analysis on the arguments presented by her complaint, rather than her conflicting deposition testimony.

[9] Any claim on the basis of Stevens' use of the "N-word" is time barred by the applicable statute of limitations. *James v. Circuit City Stores*, 370 F.3d 417, 421 (4th Cir. 2004) (applying a four year statute of limitations period for claims brought under 42 U.S.C. § 1981). Moreover, Ferguson admits that Georgia-Pacific responded promptly to

because of the protected activity." *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) (citation omitted) (quotation omitted). Once Plaintiff has presented a *prima facie* case, the burden of production shifts to the defendant to produce "evidence of a legitimate, non-discriminatory reason for taking the adverse employment action." *Id.* If the defendant presents evidence of a legitimate reason for the action taken "the plaintiff then must show that the employer's proffered reasons are pretextual or [her] claim will fail." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). However, the plaintiff is not required to offer additional evidence to show pretext other than that which was offered to make out a *prima facie* case. *Id.* The plaintiff can survive summary judgment as long as she has offered sufficient evidence to allow a reasonable jury to disbelieve the defendant's proffered reason for the action taken. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-149 (2000). At all times, the burden of persuasion remains with the plaintiff. *Id.* at 143.

Ferguson has not shown she engaged in protected activity, and has therefore failed to establish a *prima facie* case of retaliatory discharge. Even if Ferguson could establish a *prima facie* case, she has not presented evidence sufficient to rebut Georgia-Pacific's proffered reason for firing her.

The only protected activity that could form the basis for a relation claim was Ferguson's discussions with Regional Human Resources Manager Denise Hughes. Ferguson claims that she asked Hughes to file an EEOC claim with Georgia-Pacific's internal EEOC office. However, Ferguson by her own admission never told Hughes that she was being discriminated on the basis of her race. (PL. Dep. at 138-140).[10] Complaining to human resources about one's general

---

her 2000 complaint against Stevens, and that she has not heard him use the "N-word" since. (Pl. Dep. at 65-66).
 [10] Ferguson testified:
 Q: When you spoke to Denise on September 1st, 2005 you never told her that you were being racially

troubles with co-workers is not a protected activity. *See McNair v. Computer Data Sys., Inc.*, 172 F.3d 863 (Table) (4th Cir. 1999) (holding that a general complaint to a third party client does is not protected activity and citing *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3rd Cir. 1995); *Felix v. Sun Microsystems, Inc.*, 2004 WL 911303, 18–19 (D. Md. 2004) (generalized complaints of harassment to various members of human relations department that did not specifically reference ADA or FMLA are not protected activity and thus not a basis for a retaliation claim).

Even if I were to assume, that Ferguson adequately expressed to Hughes her wish to have an EEOC claim filed based on her membership in a protected class, she has still failed to show that Georgia Pacific's reason for terminating her employment was a pretext. Although Ferguson disputes the basis of her last chance warning, she does not dispute that she was aware she could be terminated for any violation of company policy. She also knew that it was a safety violation to continue blowing compressed air when other employees entered the knife room. The only evidence Plaintiff has offered in rebuttal is her own testimony that it was common practice to continue blowing when a person entered the knife room. Ferguson cannot avoid summary judgment by simply denying the reason offered by Georgia-Pacific. She must offer something beyond her own claims that the Georgia-Pacific's reason for terminating her was a pretext. She has failed to do so, and summary judgment is therefore appropriate.

## IV. CONCLUSION

---

```
            discriminated against, did you?
   A:       No, I didn't use that word.
   Q:       You didn't use any words that related to your race, did you?
   A:       No.
   Q:       In fact the basis of your complaint was generally related to your feeling of, perhaps, being treated
            unfairly, correct?
   A:       Correct.
(Pl. Dep. at 139)
```

Plaintiff has failed to establish a *prima facie* case of race discrimination under 42 U.S.C. § 1981. Defendant's Motion is therefore GRANTED.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

ENTERED: February 4, 2008

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

- 11 -

Case 6:06-cv-00049-NKM-mfu   Document 24   Filed 02/05/08   Page 11 of 11   Pageid#: 243